Clayton L. Everett, State Bar No. 24065212
NORRED LAW, PLLC | 515 E. Border Street | Arlington, Texas 76010
Telephone: (817) 704-3984 | clayton@norredlaw.com
Attorney for the Plaintiff Scott Publishing, LLC

# United States Bankruptcy Court

Northern District of Texas
Fort Worth Division

| | |
|---|---|
| **In re:**<br>**Gerry Maxwell Goodman and Annette Margaret Goodman,**<br><br>**Debtors**<br><br>**Scott Publishing, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Gerry Maxwell Goodman,**<br><br>**Defendant.** | **Case No. 26-43070-elm7**<br><br>**Chapter 7**<br><br><br><br><br><br>**Adversary No. ___________** |

## COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), AND (a)(6), AND OBJECTING TO DISCHARGE UNDER 11 U.S.C. § 727(a)(2)(A), (a)(4)(A), AND (a)(5)

Plaintiff Scott Publishing, LLC ("Scott Publishing") files this Complaint against Defendant Gerry Maxwell Goodman ("Goodman") and respectfully shows the Court as follows:

## I. PARTIES

1. Plaintiff Scott Publishing, LLC is a Texas limited liability company with its principal place of business in Tarrant County, Texas. Scott Publishing is a creditor of Goodman. Scott Publishing is owned and operated by Jerry Scott, an individual.

2. Defendant Gerry Maxwell Goodman is an individual and a Debtor in Case No. 26-43070-elm7. He resides at 4317 Rowan Drive, Fort Worth, Texas 76116, and may be served by first-class mail at that address under Federal Rule of Bankruptcy Procedure 7004(b)(9), with a copy to his

bankruptcy counsel, Kirk Matthew Claunch, The Claunch Law Firm, 301 W. Central Ave., Fort Worth, Texas 76164, under Rule 7004(g).

3. Goodman did business under the assumed name "European Motor Cars." European Motor Cars is not a separate legal entity, and all obligations incurred in that name are Goodman's personal obligations.

4. Co-Debtor Annette Margaret Goodman died on July 15, 2026. Scott asserts no claim against her or her estate in this Complaint.

## II. JURISDICTION, VENUE, AND STATEMENT UNDER RULE 7008

5. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 and the standing order of reference of the United States District Court for the Northern District of Texas. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

6. Venue is proper in this district under 28 U.S.C. § 1409(a).

7. This adversary proceeding is brought under 11 U.S.C. §§ 523 and 727 and Federal Rules of Bankruptcy Procedure 4004, 4007, and 7001. It is timely: the first date set for the meeting of creditors was August 18, 2026, and the Notice of Chapter 7 Bankruptcy Case set October 19, 2026 as the deadline to object to discharge and to challenge dischargeability.

8. Pursuant to Federal Rule of Bankruptcy Procedure 7008, Scott Publishing consents to the entry of final orders and judgment by the Bankruptcy Court, including a money judgment on the nondischargeable debt.

## III. FACTUAL ALLEGATIONS

### A. Goodman solicits $52,000 from Scott Publishing

9. Goodman operated a used European automobile business at 2609 White Settlement Road, Fort Worth, Texas 76107 (the "Property") under the name "European Motor Cars." Scott

Publishing's principal, Jerry Scott, had bought vehicles from and done business with Goodman for years.

10. In October 2025, Goodman approached Jerry Scott and asked Scott Publishing to provide $52,000 on a short-term basis.

11. On or about October 20, 2025, Scott Publishing, as Buyer, entered into an Equity Purchase Agreement (the "Agreement") with "European Motor Cars, Inc.," as Seller, dated as of October 26, 2025. Goodman signed the Agreement "Individually and on behalf of" European Motor Cars, Inc. A true and correct copy of the Agreement is attached as Exhibit A.

12. Under the Agreement, Scott Publishing paid $52,000 for 10% of the equity of the Business, including a 50% interest in five vehicles (the "Vehicles"):

| Vehicle | VIN |
|---|---|
| 2002 Lexus SC 430 Coupe | JTHFN487520031145 |
| 2004 Ford Thunderbird | 1FAHP60A54Y105382 |
| 1979 Mercedes-Benz 450 SL | WDB10704412054857 |
| 1982 Mercedes-Benz 380 SL | WDBBA45A9CB014986 |
| 2011 Mercedes-Benz GLK SUV | WDCGG5GB3BF566081 |

13. Seller was obligated to repurchase Scott Publishing's interest for $104,000 (the "Buy Back Price") no later than 30 days after the Agreement, that is, by November 25, 2025. Section 3 further required Seller to pay Scott Publishing one-half of the proceeds of any sale of the Vehicles or the Property within one day of closing until the Buy Back Price was paid in full.

14. Goodman personally guaranteed all of Seller's obligations under the Agreement. Because European Motor Cars is Goodman's assumed name, those obligations are also his direct obligations.

15. Scott Publishing paid the full $52,000 by two checks payable to "European Motor Cars": Check No. 1429 for $10,000, dated October 11, 2025, and Check No. 1432 for $42,000, dated October 20, 2025. Goodman deposited both checks into an account in the name of "European Motor Cars, Ltd." at Worthington Bank on or about October 14 and October 20, 2025, respectively.

**B. Goodman's Representations**

16. To induce Scott Publishing to provide the funds, Goodman represented to Jerry Scott that (a) a prior contract to sell the Property had been held up by litigation that was now resolved; (b) Goodman had a new buyer under contract to purchase the Property for approximately $1.2 million; (c) that sale could not close until Goodman paid approximately $52,000 in legal fees incurred in the prior contract dispute; (d) Goodman needed Scott Publishing's funds to pay those fees so the sale could close; (e) the sale would close within 30 days; and (f) Goodman would pay the Buy Back Price from the proceeds of the sale of the Property and the Vehicles, and the investment would enable his business to continue operating.

17. Goodman put these representations in writing. Before Scott Publishing paid the $42,000 balance, Jerry Scott asked for proof of the pending sale. On October 14 and 15, 2025, Goodman emailed Jerry Scott a sales contract for the Property with buyer Gil Hernandez for $1.2 million. Goodman stated that a closing statement signed by Goodman, his wife, and the buyer, dated September 25, 2025, had been "postponed until the $52,000 is paid," and that he had "sent them a check for $10,000 yesterday." Scott Publishing relied on these statements in paying the balance.

18. Goodman also made written representations in Section 4 of the Agreement, including that:

a. Seller had good title to the Vehicles and the Property (§ 4);

b. Seller was a Texas corporation duly organized, validly existing, and in good standing (§ 4(a));

c. No claims, lawsuits, or proceedings were pending or threatened against Seller relating to the Business, and no circumstances existed that could give rise to such claims (§ 4(c)); and

d. No representation or document furnished to Scott Publishing contained an untrue statement of material fact or omitted a material fact necessary to make the statements not misleading (§ 4(f)).

19. Goodman selected the five Vehicles and delivered to Scott Publishing a certificate of title for each, together with printouts of his business's website listings for most of them, representing that the Vehicles were owned by his business, in its inventory, and available for sale. For the Thunderbird and the GLK, Goodman delivered certified copies of title issued October 21, 2025 in the names of Goodman and his wife. For the Lexus, the 450 SL, and the 380 SL, Goodman delivered certificates of title issued to third parties (David B. and Barbara S. Dike, Jerry Riddle, and Lee Stewart Anderson, respectively), each assigned to "European Motor Cars, Ltd."

20. Scott Publishing relied on these representations. Scott Publishing would not have paid $52,000 had it known the truth. Its reliance was justifiable and reasonable given the parties' long business relationship, the written warranties in the Agreement, the delivery of certificates of title, and the website listings.

**C. The representations were false**

21. European Motor Cars was not a corporation. Goodman admitted in the state court litigation described below that "European Motor Cars" is merely an assumed name he used, not an active Texas corporation. Goodman deposited Scott Publishing's checks into an account in yet another name, "European Motor Cars, Ltd."

22. Upon information and belief, when the Agreement was signed, Goodman was already subject to claims by other creditors, including a claim by Don Davis that was later paid as a judgment from the proceeds of the sale of the Property, contrary to Section 4(c). By Goodman's own account, he also owed approximately $52,000 in unpaid legal fees from litigation over a prior contract to sell the Property, a further circumstance contrary to Section 4(c)

23. Upon information and belief, Goodman did not hold good title to the Lexus, the 450 SL, or the 380 SL. One or more of them was held on consignment for its owner, and Goodman had no right to sell or convey an interest in it to Scott Publishing. Upon information and belief, at least one had already been sold, or was sold shortly afterward, without notice to Scott Publishing. At the § 341 meeting, Goodman acknowledged that at least one consigned vehicle was sold and that he kept the proceeds without paying its owner.

24. Upon information and belief, when the Agreement was signed, Goodman did not hold good title to all five Vehicles. At least one Vehicle had already been sold, and one or more of the title certificates delivered to Scott Publishing were marked "duplicate."

25. Goodman did not use Scott's money as he represented. In text messages to Jerry Scott on May 28 and May 31, 2026, Goodman admitted that he gave the money to a person he believed was the daughter of a fraternity brother, who promised to repay him from her late father's estate. He wrote that this repayment was the money he had "planned to repay you with." Copies of these messages are attached as Exhibit B.

26. Goodman did not use the funds to pay legal fees or to close the sale of the Property. Upon information and belief, after depositing Scott Publishing's checks at Worthington Bank, Goodman promptly wired the funds to an individual in Nevada, as he later testified at the § 341 meeting. Goodman first mentioned the third-party payment months after he defaulted.

27. Goodman never disclosed to Scott Publishing that the funds would go to this third party or that repayment depended on money expected from a stranger's estate. Those facts were material, and Goodman concealed them to obtain Scott Publishing's money.

28. Goodman did not pay any part of the Buy Back Price by November 25, 2025, or at any time since.

**D. Goodman sells the Vehicles and the Property and pays Scott Publishing nothing**

29. At the meeting of creditors held under 11 U.S.C. § 341 on August 18, 2026, Goodman testified under oath that he sold the 2002 Lexus SC 430, the 1979 Mercedes-Benz 450 SL, and the 1982 Mercedes-Benz 380 SL before filing bankruptcy. Upon information and belief, he obtained duplicate or replacement certificates of title to complete those sales while Scott Publishing held the original certificates.

30. Goodman further testified that Scott's funds were wired, immediately upon receipt, to an individual in Nevada in connection with a "probate matter."

31. Upon information and belief, the Property was sold and the proceeds were used to pay a judgment in favor of Don Davis of more than $400,000. Scott Publishing received no part of the proceeds of the Property or of any Vehicle, despite Section 3 of the Agreement.

**E. The bankruptcy estate**

32. Goodman and his wife filed a joint voluntary Chapter 7 petition on July 14, 2026. Goodman signed his Schedules and Statement of Financial Affairs ("SOFA") under penalty of perjury.

33. Goodman's Schedule A/B lists only two vehicles, the 2004 Ford Thunderbird and the 2011 Mercedes-Benz GLK. It does not disclose the Lexus, the 450 SL, or the 380 SL, or any interest in or proceeds from their sale.

34. Goodman's SOFA, Line 18, discloses no transfers of property within the two years before filing, even though Goodman sold the Lexus, the 450 SL, and the 380 SL and the Property within that period.

35. Goodman's Schedule E/F lists Scott Publishing's claim as a disputed, nonpriority unsecured claim of $104,000.

36. Before the petition, Scott Publishing sued Goodman, Margaret Goodman, and European Motor Cars, Inc. in Cause No. 2026-003692-1 in the County Court at Law No. 1 of Tarrant County, Texas, to enforce the Agreement. That action is stayed by 11 U.S.C. § 362.

## IV. COUNT ONE: NONDISCHARGEABILITY UNDER 11 U.S.C. 523(a)(2)(A)

37. Scott Publishing incorporates all preceding paragraphs.

38. Goodman obtained $52,000 from Scott Publishing by false pretenses, false representations, and actual fraud, other than statements respecting his financial condition.

39. Goodman's representations about the purpose and use of the funds and the source and timing of repayment (¶ 16 above) were false when made. Goodman knew they were false, or made them with reckless disregard for their truth.

40. Goodman's promise to repay within 30 days from the sale of the Vehicles and the Property was made with no intention of performing it. He intended instead to send the funds to a third party and to repay Scott Publishing, if at all, from money he expected from that third party's family estate.

41. Goodman's failure to disclose the true destination of the funds and the true source of repayment, while affirmatively representing a different purpose and source, created a false impression and constitutes false pretenses and actual fraud.

42. Goodman made these representations and omissions with the intent to deceive Scott Publishing and to induce it to part with its money. Scott Publishing actually and justifiably relied on them.

43. Scott Publishing suffered damages as a proximate result.

44. All of Goodman's liability to Scott Publishing arising from the funds obtained by this fraud, including damages, attorneys' fees, costs, and interest, is excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

## V. COUNT TWO: NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(B)

45. Scott Publishing incorporates all preceding paragraphs. This Count is pleaded in the alternative to Count One to the extent any representation is found to be a statement respecting Goodman's financial condition.

46. Goodman obtained $52,000 from Scott Publishing by use of statements in writing (the Agreement and Goodman's October 14–15, 2025 email transmitting the sales contract and representing the status of the Property's sale) that (a) were materially false; (b) respected Goodman's financial condition, including his ownership of and good title to the Vehicles and the Property, the corporate existence and standing of his business, and the absence of pending or threatened claims; (c) Scott Publishing reasonably relied on; and (d) Goodman caused to be made or published with intent to deceive.

47. Goodman signed the Agreement individually and on behalf of the business and delivered it to Scott Publishing.

48. Goodman's debt to Scott Publishing is excepted from discharge under 11 U.S.C. § 523(a)(2)(B).

## VI. COUNT THREE: NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(6)

49. Scott Publishing incorporates all preceding paragraphs.

50. Under the Agreement, Scott Publishing owned a 50% interest in each Vehicle and held the original certificates of title.

51. Goodman sold the Lexus, the 450 SL, and the 380 SL without Scott Publishing's knowledge or consent, upon information and belief using duplicate or replacement titles to avoid Scott's possession of the originals. He kept or disposed of all the proceeds, including Scott Publishing's share.

52. Goodman also sold the Property and directed its proceeds to other creditors, although Section 3 of the Agreement required him to pay one-half of those proceeds to Scott Publishing within one day of closing.

53. Goodman's conduct constitutes conversion and a willful and malicious injury to Scott Publishing and its property. Goodman either intended to injure Scott Publishing or knew his conduct was substantially certain to cause that injury, and acted without just cause or excuse.

54. Goodman's debt to Scott Publishing for this injury is excepted from discharge under 11 U.S.C. § 523(a)(6).

## VII. COUNT FOUR: OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727(a)(4)(A)

55. Scott Publishing incorporates all preceding paragraphs.

56. Goodman knowingly and fraudulently made false oaths in connection with this case. Under penalty of perjury, he signed a SOFA that omitted his pre-petition transfers of the Lexus, the 450 SL, and the 380 SL and the Property, and Schedules that omitted any interest in those assets or their proceeds.

57. These omissions were material. They bear directly on the discovery of assets, the existence and disposition of property, and potential avoidance actions available to the Trustee and creditors.

58. Goodman knew of these transfers, as his testimony at the § 341 meeting confirms. He omitted them knowingly and with fraudulent intent or reckless indifference to the truth.

59. Goodman should be denied a discharge under 11 U.S.C. § 727(a)(4)(A).

## VIII. COUNT FIVE: OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727(a)(2)(A)

60. Scott Publishing incorporates all preceding paragraphs.

61. Within one year before the petition date, Goodman, with intent to hinder, delay, or defraud creditors including Scott Publishing, transferred, removed, or concealed his property. Upon information and belief, this included selling the Lexus, the 450 SL, and the 380 SL by means of duplicate or replacement titles while Scott Publishing held the originals, and diverting or concealing the proceeds of those sales and of the Property.

62. Goodman should be denied a discharge under 11 U.S.C. § 727(a)(2)(A).

## IX. COUNT SIX: OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727(a)(5)

63. Scott Publishing incorporates all preceding paragraphs.

64. Within the two years before the petition date, Goodman held substantial assets, including the Property, which he represented was under contract for approximately $1.2 million; the Vehicles and their sale proceeds; and the $52,000 he obtained from Scott Publishing.

65. Goodman's Schedules disclose no remaining cash, sale proceeds, or other non-exempt assets of meaningful value. Upon information and belief, Goodman has attributed the loss of his assets to an online scam of approximately $1.5 million. Upon information and belief, Goodman has produced no documentation of the alleged scam, of the disposition of the Property's sale proceeds beyond the payment to Don Davis, or of the disposition of the Vehicle sale proceeds.

66. Goodman has failed to explain satisfactorily the loss or deficiency of these assets to meet his liabilities and should be denied a discharge under 11 U.S.C. § 727(a)(5).

## X. AMOUNT OF THE NONDISCHARGEABLE DEBT

67. Goodman's debt to Scott Publishing is the $104,000 Buy Back Price under the Agreement, plus attorneys' fees and costs under Section 8 of the Agreement and Texas Civil Practice and Remedies Code § 38.001, and pre- and post-judgment interest at the lawful rate.

68. Alternatively, if the Court determines that the Agreement is an extension of credit, Goodman's debt to Scott Publishing is no less than the $52,000 he obtained, plus interest at the maximum lawful rate, attorneys' fees, and costs. Scott Publishing does not seek, and disclaims, any interest or charge in excess of that permitted by applicable law. Any such amount found to have been charged is not sought and should be credited.

69. Scott Publishing further seeks exemplary damages for fraud as permitted by Chapter 41 of the Texas Civil Practice and Remedies Code.

70. All conditions precedent to Scott Publishing's claims have been performed, have occurred, or have been waived.

71. Scott Publishing asks the Court to enter a judgement against Gerry Maxwell Goodman:

a. Determining that Goodman's debt to Scott Publishing is excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A) or (a)(2)(B) and (a)(6);

b. Awarding Scott Publishing a money judgment against Goodman for $104,000, or alternatively, not less than $52,000, together with exemplary damages as permitted by law;

c. Denying Goodman a discharge under 11 U.S.C. § 727(a)(2)(A), (a)(4)(A), and (a)(5);

d. Awarding Scott Publishing its reasonable attorneys' fees and costs;

e. Awarding pre and postjudgment interest at the maximum lawful rate; and

f. Granting Scott Publishing all other relief to which it is entitled.

Respectfully submitted:

By:___/s/ Clayton L. Everett_______
Clayton L. Everett | State Bar No. 24065212
clayton@norredlaw.com
Norred Law, PLLC
515 E. Border St.; Arlington, Texas 76010
Telephone: (817)704-3984
Attorney for Plaintiff Scott Publishing, LLC