# EQUITY PURCHASE AGREEMENT

This Agreement (this "**Agreement**"), dated as of October 26, 2025 (the "Effective Date"), is entered into between European Motor Cars, Inc. ("**Seller**"), and Scott Publishing LLC ("**Buyer**").

1. **Conveyance**. For good and valuable consideration in the amount of the Purchase Price (as defined below), the receipt and adequacy of which Seller hereby acknowledges, Seller irrevocably sells, conveys, assigns, transfers, and delivers to Buyer ten percent (10%) of Seller's equity and interest in and to, and which relate to, Seller (the "**Business**") including but not limited to the following (collectively, the "**Purchased Equity**"): a 50% interest a 2002 Lexus SC 430 Coupe - VIN JTHFN487520031145, a 2004 Ford Thunderbird - VIN 1FAHP60A54Y105382, a 1979 Mercedes Benz 450 SL VIN WDB 10704412054857, a 1982 Mercedes Benz 380SL - VIN WDBBA45A9CB014986, and a 2011 Mercedes GLK SUV - VIN WDCGG5GB3BF566081 (the "Vehicles"). In the event any of the Vehicles are sold within 30 days of the Effective Date, 50% of the sale proceeds from each sale shall be paid to Buyer and applied to the Buy Back Price (as defined below). Seller acknowledges that Seller has already received from Buyer $10,000.00 of the Purchase Price (as defined below).

2. **No Liabilities.** Notwithstanding any provision in this Agreement to the contrary, Buyer shall assume no liabilities or obligations of Seller of any kind, whether related to the Business or the Vehicles, known or unknown, contingent, matured, currently existing or hereinafter created, or otherwise.

3. **Purchase Price.** The aggregate purchase price for the Purchased Equity shall be $52,000 (the "**Purchase Price**"). On the Effective Date, Buyer shall pay $52,000 for the Purchased Equity by wire transfer or check to Seller of immediately available funds by check or in accordance with Seller's wire transfer instructions which have been provided to Buyer in writing. Seller shall repurchase the Purchased Equity for $104,000 (the "Buy Back Price") no later than 30 days from the Effective Date. Buyer shall receive a payment of ½ of the sales proceeds received by Seller for any of the Vehicles or the property located at 2609 White Settlement Rd. Fort Worth, Texas 76107 (the "Property") within 1 day of the closing of such a sale until the Buy Back Price is paid in full. In the event the proceeds from the sale of the Vehicles or the Property are insufficient to pay the Buy Back Price in full, the remaining balance shall be paid by Seller on the 30th day after the Effective Date. Upon receipt by Buyer of the Buy Back Price, Buyer will reassign all of Buyers interest in Seller to Seller. Gerry Goodman and his wife, Margaret Goodman (jointly "Guarantors") personally guaranty all of Seller's obligations under this Agreement and shall remain personally responsible for all such obligations until they are fulfilled.

4. **Representations and Warranties of Seller. Seller** represents and warrants to Buyer that the statements represented for this transaction, including but not limited to the statement that Seller has good title to the Vehicles and Property, are true and correct as of the date hereof.

(a) **Organization and Authority of Seller.** Seller is a Texas Corporation duly organized, validly existing, and in good standing under the laws of the State of Texas. Seller has full corporate power and authority to enter into this Agreement, to carry out its obligations hereunder, and to consummate the transactions contemplated hereby. The execution and delivery

by Seller of this Agreement, the performance by Seller of its obligations hereunder, and the consummation by Seller of the transactions contemplated hereby have been duly authorized by all requisite corporate, board, and shareholder action on the part of Seller. This Agreement constitutes legal, valid, and binding obligations of Seller enforceable against Seller in accordance with its terms.

(b) **No Conflicts or Consents.** The execution, delivery, and performance by Seller of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not: (i) violate or conflict with any provision of the certificate of incorporation, by-laws, or other governing documents of Seller; (ii) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Seller or the Purchased Equity; (iii) conflict with, or result in (with or without notice or lapse of time or both) any violation of, or default under, or give rise to a right of termination, acceleration or modification of any obligation or loss of any benefit under any contract or other instrument to which Seller is a party or to which any of the Purchased Equity is subject; or (iv) result in the creation or imposition of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance ("**Encumbrance**") on the Purchased Equity that violates any other agreement. No consent, approval, waiver or authorization is required to be obtained by Seller from any person or entity (including any Governmental Authority) in connection with the execution, delivery and performance by Seller of this Agreement and the consummation of the transactions contemplated hereby.

(c) **Legal Proceedings.** There are no claims, actions, causes of action, demands, lawsuits, arbitrations, inquiries, audits, notices of violation, proceedings, litigation, citations, summons, subpoenas, or investigations of any nature, whether at law or in equity (collectively, "**Actions**") pending or, to Seller's knowledge, threatened against or by Seller: (i) relating to or affecting the Business or the Purchased Equity; or (ii) that challenge or seek to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Actions.

(d) **Compliance with Laws.** Seller is in compliance with all Laws applicable to the conduct of the Business as currently conducted or the ownership and use of the Purchased Equity.

(e) **Brokers.** No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller.

(f) **Full Disclosure.** No representation or warranty by Seller in this Agreement and no statement contained in any materials or documents furnished or to be furnished to Buyer in connection with the transactions contemplated by this Agreement (including any materials or documents Seller caused to be furnished to Buyer) contains any untrue statement of a material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading.

5. **Representations and Warranties of Buyer. Buyer** represents and warrants to Seller that the statements are true and correct as of the date hereof.

(a) **Organization and Authority of Buyer.** Buyer is a corporation duly organized, validly existing, and in good standing under the laws of Texas. Buyer has full corporate power and authority to enter into this Agreement, to carry out its obligations hereunder, and to consummate the transactions contemplated hereby. The execution and delivery by Buyer of this Agreement, the performance by Buyer of its obligations hereunder, and the consummation by Buyer of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Buyer. This Agreement constitutes legal, valid, and binding obligations of Buyer enforceable against Buyer in accordance with its terms.

(b) **No Conflicts; Consents.** The execution, delivery, and performance by Buyer of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not: (i) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of Seller; or (ii) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Seller. No consent, approval, waiver or authorization is required to be obtained by Buyer from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby.

(c) **Brokers.** No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Buyer.

6. **Public Announcements.** Unless otherwise required by applicable law, neither party shall make any public announcements regarding this Agreement or the transactions contemplated hereby without the prior written consent of the other party (which consent shall not be unreasonably withheld or delayed).

7. **Survival.** All representations, warranties, covenants, and agreements contained herein and all related rights to indemnification shall survive the date hereof.

8. **Indemnification by Seller and Guarantors.** Seller and Guarantors shall defend, indemnify and hold harmless Buyer, its affiliates and their respective stockholders, directors, officers and employees from and against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees and disbursements, arising from or relating to:

(a) any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement; or

(b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by Seller pursuant to this Agreement.

(c) any claim against Buyer related to the Business, Purchased Equity, Vehicles or the Property.

9. **Indemnification by Buyer.** Buyer shall defend, indemnify and hold harmless Seller, its affiliates and their respective stockholders, directors, officers and employees from and

against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees and disbursements, arising from or relating to:

(a) any inaccuracy in or breach of any of the representations or warranties of Buyer contained in this Agreement; or

(b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by Buyer pursuant to this Agreement.

10. **Expenses.** All costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

11. **Notices.** All notices, claims, demands, and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by email of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient, or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section):

**If to Seller:** Gerry Goodman
European Motor Cars, Ltd.
Email: gerrymgoodman@yahoo.com

**If to Buyer:** Jerry Scott
Email: jerry@817biz.com
With a copy to smoses@mph-law.com

12. **Interpretation; Headings.** This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

13. **Severability.** If any term or provision of this Agreement is invalid, illegal, or unenforceable in a permissible jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement.

14. **Entire Agreement.** This Agreement constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.

15. **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. No party

may assign its rights or obligations hereunder without the prior written consent of any party affected by such assignment, which consent shall not be unreasonably withheld or delayed. Any purported assignment in violation of this Section shall be null and void. No assignment shall relieve the assigning party of any of its obligations hereunder.

16. **Amendment and Modification; Waiver.** This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each party hereto. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No failure to exercise, or delay in exercising, any right or remedy arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy.

17. **Governing Law; Submission to Jurisdiction.** Matters arising out of or relating to this Agreement shall be governed by and construed in accordance with the laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) and the sole and exclusive jurisdiction and venue for any claim related to this Agreement shall be in Tarrant County, Texas

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

By: ______________________________
Gerry Goodman, Individually and on behalf of Owner, European Motor Cars, Inc.

By: ______________________________
Margaret Goodman

By: ______________________________
Jerry Scott on behalf of Scott Publishing, LLC

L:\Scott, Jerry\European Motor Cars\Agreements\Drafts\Equity Purchase Agreement-European Motor Cars Ltd 10.20.25 SDM final.docx