**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **IN RE:**<br>**GERRY MAXWELL GOODMAN and ANNETTE MARGARET GOODMAN (DEC'D),**<br>Debtors. | **Bankruptcy Case No.**<br>26-43070-elm7<br><br>**Chapter 7** |
| **SCOTT PUBLISHING, LLC**<br>Plaintiff, | **Adversary No.**<br>26-04139-elm |
| v. | |
| **GERRY MAXWELL GOODMAN**<br>Defendant. | |

**<u>DEFENDANT GERRY MAXWELL GOODMAN'S ANSWER TO COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT</u>**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Defendant Gerry Maxwell Goodman ("Goodman" or "Defendant") files this Answer to Plaintiff's Complaint to Determine Dischargeability of Debt under 11 U.S.C. § 523(a)(2)(A), 523(a)(2)(B), 523(a)(6), 727(a)(4)(A), 727(a)(2)(A), and 727(a)(5); and respectfully states as follows:

## I.

## GENERAL DENIAL AND PRELIMINARY STATEMENT

1. Except as expressly admitted herein, Defendant denies each and every allegation contained in Plaintiff's Complaint and demands strict proof thereof.

2. Defendant Gerry Maxwell Goodman files this Answer solely on his own behalf.

3. This Answer is not filed on behalf of Annette Margaret Goodman, her estate, or any personal representative or successor as she is not named as a party in this proceeding.

4. Defendant specifically denies that he obtained money from Plaintiff through false pretenses, a false representation, or actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

5. Defendant admits that money was borrowed from Plaintiff. Defendant denies, however, that he borrowed the money with an intent not to repay it or with an intent to deceive Plaintiff.

6. At the time Defendant borrowed the money, Defendant intended to repay Plaintiff and believed that he would have sufficient funds available to do so.

7. Defendant was himself the victim of an extended fraudulent scheme perpetrated by third parties. Defendant believed the representations being made to him by those third parties and believed that substantial funds would become available to him.

8. Defendant's beliefs ultimately proved to be mistaken. The anticipated funds were not realized, and Defendant suffered substantial financial losses as a result of the fraudulent scheme.

9. Defendant's subsequent inability to repay Plaintiff does not establish that Defendant lacked an intent to repay Plaintiff when the loan was made.

10. Plaintiff alleges that Defendant paid substantial sums to persons whom Plaintiff characterizes as scam participants, expected to receive approximately $1 million, and remained caught in the scheme for years before his family determined that he was being scammed. Defendant denies that these circumstances establish any intent by Defendant to defraud Plaintiff.

## II.

## ANSWER TO SPECIFIC ALLEGATIONS

**Paragraph 1.** Goodman lacks knowledge sufficient to admit Plaintiff's organizational status and principal place of business and therefore denies those allegations. Goodman admits Plaintiff asserts a claim arising from the transaction at issue and that Jerry Scott acted on Plaintiff's behalf.

**Paragraph 2.** Admitted that Goodman is a debtor in the identified Chapter 7 case and resides at the address alleged. The remaining statements concern service and are legal conclusions to which no response is required; to the extent a response is required, denied.

**Paragraph 3.** Admitted.

**Paragraph 4**. Admitted on information presently available that Annette Margaret Goodman died on July 15, 2026. Plaintiff's characterization of the scope of its claims requires no response.

**Paragraph 5.** Admitted that this Court has subject-matter jurisdiction over the statutory discharge and dischargeability issues and that they are core proceedings. Goodman does not admit that Plaintiff is entitled to a money judgment.

**Paragraph 6.** Admitted.

**Paragraph 7.** Admitted that Plaintiff purports to proceed under the cited statutes and rules and that the bankruptcy notice stated October 19, 2026 as the deadline for complaints of this type. Any remaining legal conclusions require no response.

**Paragraph 8.** Goodman consents to the Bankruptcy Court entering final orders and judgment on claims within its statutory and constitutional authority, without conceding any entitlement to relief.

**Paragraph 9.** Admitted that Goodman operated European Motor Cars at the identified location and had prior business dealings with Jerry Scott.

**Paragraph 10.** Admitted that Goodman sought and received funds in connection with a short-term transaction.

**Paragraph 11.** Admitted that Goodman executed an instrument entitled "Equity Purchase Agreement" in October 2025 and signed individually and in a stated business capacity.

**Paragraph 12.** Admitted that the Agreement recites $52,000 and identifies the five listed vehicles and purported interests. Denied to the extent Plaintiff asserts that the instrument conclusively established its present ownership of a 50% interest in each vehicle; the nature and effect of any rights conveyed are disputed. Admits that the equity purchase agreement gave Scott Publishing the right to ½ of the sales proceeds of the vehicles. Two of the vehicles are owned by Gerry Goodman which are listed in his schedules. Admit that the 2002 Lexus SC 430 and the 1982

Mercedes Benz were returned before bankruptcy was filed to their owners. The 1979 Mercedes Benz was sold before the agreement was signed with Scott Publishing.

**Paragraph 13**. Admitted that Section 3 contains a $104,000 repurchase provision and requires specified payments from certain sale proceeds. The Agreement speaks for itself as to timing and conditions.

**Paragraph 14.** Admitted that the Agreement includes language imposing personal responsibility on Goodman.

**Paragraph 15.** Admitted that Plaintiff furnished funds totaling $52,000 in connection with the Agreement.

**Paragraph 16**. Denied as stated. Goodman admits discussing the property and repayment expectations but denies knowingly making false statements or promises with intent to deceive.

**Paragraph 17.** Goodman admits communications concerning the property but lacks presently verified copies of all cited emails and documents sufficient to admit the precise statements, timing, and claimed reliance; the remaining allegations are denied.

**Paragraph 18.** Admitted that the Agreement contains written representations and warranties, including provisions concerning title, organization, and claims. The writing speaks for itself.

**Paragraph 19.** Admitted that vehicles were identified in connection with the transaction. Goodman denies that Plaintiff's possession of certificates or copies, without more, conclusively established ownership or a right to prohibit sale. Goodman lacks sufficient verified information to admit the precise title histories, issuance dates, or documents delivered and otherwise denies.

**Paragraph 20.** Denied. Goodman specifically denies the alleged fraudulent inducement and does not admit the asserted reliance, its reasonableness or justifiability, or causation.

**Paragraph 21.** Admitted that European Motor Cars operated as Goodman's sole proprietorship rather than a corporation. The Agreement and bank records speak for themselves. Goodman denies that use of the business designation establishes fraudulent intent.

**Paragraph 22**. Goodman admits that he had outstanding obligations to creditors. Goodman expressly denies that money borrowed from Scott Publishing was used to pay the debt owed to Don Davis. Goodman admits he represented he needed the money to pay legal fees but does not remember discussing all of the facts related to the origin of the fees. Goodman denies he owed $52,000.00 in unpaid legal fees in connection with litigation over the sale of property. Goodman admits he needed the $52,000.00 to pay for legal fees claimed to be owed by the individuals scamming him in Nevada. As part of the scam, it was represented to Goodman that the $52,000.00 in legal fees had to be paid to close an "estate" which Goodman was led to believe to be necessary in order for him to be reimbursed from funds from the "estate."

**Paragraph 23.** Denied as stated. Goodman does not admit Plaintiff's characterizations of the ownership, consignment arrangements, authority to sell, or alleged retention of proceeds without accounting.

**Paragraph 24.** Admit that Goodman did not hold good title to all five vehicles. The 1979 Mercedes was sold before the agreement was signed.

**Paragraph 25.** Admitted that Goodman communicated with Jerry Scott concerning a third party and funds he expected to receive. The texts speak for themselves. Denied that the messages establish that Goodman entered the Agreement intending to defraud Plaintiff. Goodman admits he needed the $52,000.00 to pay for legal fees claimed to be owed by the individuals scamming him in Nevada. As part of the scam, it was represented to Goodman that the $52,000.00 in legal fees had to be paid to close the "estate" which Goodman was led to believe to be necessary in order for him to be reimbursed from funds from the "estate."

**Paragraph 26.** Goodman admits that funds were transferred in connection with a transaction involving a third party from whom he expected repayment. He denies that the transfer itself establishes fraudulent intent at the inception of the Agreement. Goodman admits he needed the $52,000.00 to pay for legal fees claimed to be owed by the individuals scamming him in Nevada.

As part of the scam, it was represented to Goodman that the $52,000.00 in legal fees had to be paid to close the "estate" which Goodman was led to believe to be necessary in order for him to be reimbursed from funds from the "estate."

**Paragraph 27.** Denied as stated, including the allegations of intentional concealment, material fraudulent omission, and intent to obtain money by deception. Goodman did represent the money to be paid for legal fees, but does not remember discussing all of the facts related to the origin of the fees. Goodman believed he would have the money to pay Scott Publishing from funds of the estate.

**Paragraph 28.** Admitted that Plaintiff claims an unpaid balance under the Agreement. Goodman does not admit Plaintiff's computation of the balance, entitlement to $104,000, or that no payments or credits are applicable.

**Paragraph 29.** Admit that the 2002 Lexus SC 430 and the 1982 Mercedes Benz were returned before bankruptcy was filed to their owners. The 1979 Mercedes Benz was sold before the agreement was signed with Scott Publishing. The transcript of the § 341 meeting is the best evidence of his exact testimony.

**Paragraph 30.** Admitted that Goodman discussed a transfer to a third party in connection with a probate-related matter. The transcript of the § 341 meeting is the best evidence of his exact testimony.

**Paragraph 31.** Admitted that the real property was sold before bankruptcy and before the agreement with Scott Publishing. Admitted that proceeds were used to satisfy bona fide creditor obligations, including the debt owed to Don Davis. Don Davis was paid in full months before Defendant filed bankruptcy and several months before Defendant borrowed any money from Scott Publishing.

**Paragraph 32.** Admitted.

**Paragraph 33.** Admitted that Schedule A/B identifies the Thunderbird and Mercedes GLK as vehicles held at filing. Denied that prepetition-sold vehicles necessarily belonged on Schedule A/B as assets owned on the petition date. Goodman denies knowingly and fraudulently omitting any asset or proceeds.

**Paragraph 34.** Goodman admits that his answer to the Statement of Financial Affairs number 18 is correct in that he did not sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of his business or financial affairs.

**Paragraph 35.** Admitted that Plaintiff's claim was scheduled as disputed, nonpriority unsecured in the amount of $104,000; this admission does not concede liability or amount.

**Paragraph 36.** Admitted that Plaintiff commenced state-court litigation concerning the Agreement. The record of that action speaks for itself. Goodman admits the automatic stay applies to proceedings against him to the extent provided by law.

**Paragraph 37.** Goodman incorporates his responses to paragraphs 1–36.

**Paragraph 38.** Denied.

**Paragraph 39.** Denied.

**Paragraph 40.** Denied.

**Paragraph 41.** Denied.

**Paragraph 42.** Denied.

**Paragraph 43.** Denied.

**Paragraph 44.** Denied.

**Paragraph 45.** Goodman incorporates his preceding responses. The characterization of alternative legal theories requires no further response.

**Paragraph 46.** Denied.

**Paragraph 47.** Admitted that Goodman signed the Agreement in his individual and stated business capacities; denied to the extent the allegation asserts the elements of § 523(a)(2)(B).

**Paragraph 48.** Denied.

**Paragraph 49.** Goodman incorporates his preceding responses.

**Paragraph 50.** Admitted that the Agreement contains language referring to a 50% equity interest in sale proceeds of the identified vehicles. Denied that Plaintiff thereby necessarily obtained an ownership interest sufficient to sustain conversion or a right to prevent the contemplated sales. Goodman lacks sufficient verified information to admit possession of each original title and otherwise denies.

**Paragraph 51**. Goodman admits the 2002 Lexus SC 430 and the 1982 Mercedes Benz were returned before bankruptcy to their owners. The 1979 Mercedes Benz was sold before the agreement was signed with Scott Publishing. Denied any sale contemplated by the Agreement themselves constituted conversion, that fraudulent replacement titles were used, or that Goodman acted with intent to cause a willful and malicious injury. The disposition and accounting of proceeds remain disputed.

**Paragraph 52.** Goodman admits the 2002 Lexus SC 430 and the 1982 Mercedes Benz were returned before bankruptcy to their owners. The 1979 Mercedes Benz was sold before the agreement was signed with Scott Publishing. The Agreement speaks for itself regarding proceeds payments. Denied that the transaction establishes conversion or willful and malicious injury.

**Paragraph 53.** Denied.

**Paragraph 54.** Denied.

**Paragraph 55.** Goodman incorporates his preceding responses.

**Paragraph 56.** Denied. Goodman denies knowingly and fraudulently making any material false oath. He admits the 2002 Lexus SC 430 and the 1982 Mercedes Benz 380SL were returned before bankruptcy to their owners. The 1979 Mercedes Benz was sold before the agreement was signed with Scott Publishing. He admits prepetition return of the vehicles occurred but does not admit that the schedules improperly omitted property held on the petition date.

**Paragraph 57.** Denied to the extent Plaintiff alleges a knowingly fraudulent material omission; materiality is a legal and factual question.

**Paragraph 58.** Admitted that Goodman knew of the transactions in which he participated. Denied that he knowingly and fraudulently concealed them or acted with fraudulent intent or reckless indifference.

**Paragraph 59.** Denied.

**Paragraph 60.** Goodman incorporates his preceding responses.

**Paragraph 61.** Admit that the 2002 Lexus SC 430 and the 1982 Mercedes Benz were returned before bankruptcy to their owners. The 1979 Mercedes Benz was sold before the agreement was signed with Scott Publishing. Goodman denies any transfer, removal, or concealment with actual intent to hinder, delay, or defraud creditors.

**Paragraph 62.** Denied.

**Paragraph 63.** Goodman incorporates his preceding responses.

**Paragraph 64.** Admitted that Goodman formerly held interests in certain business assets and real property before filing for bankruptcy. Denied that Plaintiff has established the alleged values, ownership interests, or the amount of any unexplained deficiency.

**Paragraph 65**. Denied as stated. Goodman contends that proceeds from asset sales were applied to legitimate creditor obligations and that he suffered losses associated with a third-party transaction. Goodman specifically denies any allegation that money borrowed from Scott Publishing was used to pay Don Davis. Don Davis was paid from the proceeds of the sale of the building before borrowing any money from Scott Publishing.

**Paragraph 66.** Denied.

**Paragraph 67.** Denied that Plaintiff has established an enforceable $104,000 debt, the asserted fee entitlement, or the amount of any nondischargeable obligation. The Agreement speaks for itself and all lawful credits and defenses are reserved.

**Paragraph 68.** Denied to the extent Plaintiff claims any amount beyond that lawfully recoverable, or interest exceeding applicable limits. Goodman does not admit the amount or discharge status of any debt.

**Paragraph 69.** Denied.

**Paragraph 70.** Denied.

**Paragraph 71.** Denied that Plaintiff is entitled to any of the requested relief.

## III.

## AFFIRMATIVE DEFENSES

11. Plaintiff cannot establish the elements necessary to except its debt from discharge under 11 U.S.C. § 523(a)(2)(A).

12. A debtor's statement concerning future performance may support nondischargeability only if, when the representation was made, the debtor had no intention of performing as promised. See *In re Allison*, 960 F.2d 481, 484 (5th Cir. 1992).

13. Defendant intended to repay Plaintiff when the loan was made and believed that funds would become available that would permit repayment.

14. Defendant's failure ultimately to receive the funds he anticipated, and his resulting inability to repay Plaintiff, constitute subsequent events and do not establish that Defendant possessed fraudulent intent when Plaintiff advanced the money.

15. Plaintiff's own allegations state that Defendant paid substantial sums to the third parties involved in the alleged scam, believed that he would receive approximately $1 million, and remained caught in the scheme for years before his family discovered that he was being scammed.

16. Those allegations are consistent with Defendant's position that he genuinely believed the underlying representations being made to him and expected to receive funds from which Plaintiff could be repaid.

17. Defendant denies possessing the wrongful intent required for actual fraud under § 523(a)(2)(A). *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 360-61 (2016).

18. Defendant further denies that Plaintiff justifiably relied upon any actionable false representation made by Defendant and demands strict proof of reliance and causation.

**Usury**

19. In the alternative, and without waiving any other defenses, Defendant affirmatively pleads that the transaction underlying Plaintiff's claims was, in substance, a loan or extension of credit rather than a bona fide equity purchase. Plaintiff advanced $52,000 in connection with the business operated as European Motor Cars, which was a sole proprietorship. In exchange for that advance, the Agreement required Defendant to pay Plaintiff $104,000 within approximately thirty days. That repayment obligation was mandatory and was not contingent upon the sale of the identified vehicles or other property.

20. The substance of the transaction was therefore a financing arrangement in which Plaintiff advanced $52,000 and contracted to receive an additional $52,000 as compensation for the use, forbearance, or detention of money. To the extent the transaction was primarily for business or commercial purposes, Defendant asserts the protections and limitations applicable to commercial loans under the Texas Finance Code, including Chapters 303 and 306, as applicable.

21. Defendant affirmatively pleads that the amount Plaintiff seeks to recover under the $104,000 repurchase provision includes interest or other compensation that may exceed the maximum amount permitted by applicable Texas law. Defendant denies that Plaintiff is entitled to recover any interest, charge, or other amount prohibited by the applicable usury laws and asserts all available defenses, credits, offsets, and reductions arising under the Texas Finance Code.

22. Defendant requests that the Court determine the true nature and substance of the transaction, determine the applicable statutory interest ceiling, calculate any lawful interest in accordance with applicable law, and disallow any recovery of interest or other charges in excess of the amount permitted by law.

23. Defendant reserves the right to amend this Answer and assert additional defenses revealed through discovery.

## IV.

## CONSENT TO ENTRY OF FINAL ORDERS OR JUDGMENT

24. Defendant consents to the entry of final orders and judgment by the United States Bankruptcy Court with respect to the dischargeability issues presented in this adversary proceeding.

## V.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Gerry Maxwell Goodman respectfully requests that, after trial, the Court: (a) enter judgment that Plaintiff take nothing on its claim under 11 U.S.C. § 523(a)(2)(A), 523(a)(2)(B), 523(a)(6), 727(a)(4)(A), 727(a)(2)(A), and 727(a)(5); (b) determine that Plaintiff has failed to establish that the debt at issue is excepted from Defendant's discharge; (c) determine that any debt owed to Plaintiff is dischargeable in Defendant's Chapter 7 bankruptcy proceeding; (d) deny Plaintiff's request for attorney's fees, costs, and interest except to the extent otherwise authorized by applicable law; and (e) grant Defendant such other and further relief, at law or in equity, to which Defendant may show himself entitled.

Respectfully Submitted,

*/s/ Kirk Claunch*

KIRK CLAUNCH
State Bar No. 04326075

kirkc@claunchlaw.com
The Claunch Law Firm
301 West Central Avenue
Fort Worth, Texas 76164
Telephone (817) 335-4003
Facsimile (817) 335-7112

ATTORNEY FOR DEFENDANT
GERRY MAXWELL GOODMAN

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of this document has been served upon Plaintiff's counsel via the Court's electronic filing system on November 17, 2026.

*/s/ Kirk Claunch*
Kirk Claunch